# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

———————————————

Case No. 5D2023-0652
LT Case No. 2022-CA-000554-AX

———————————————

OPTUMRX, as successor by
merger to CATAMARAN
CORPORATION, and OPTUMRX in
its own right,

    Appellant,

    v.

BAY PHARMACY INC., a FLORIDA
PROFIT CORPORATION d/b/a BAY
PHARMACY d/b/a LAKE
PHARMACY and d/b/a BAY
PHARMACY LONG TERM CARE,

    Appellee.

———————————————

On appeal from the Circuit Court for Lake County.
James R. Baxley, Judge.

Kristen M. Fiore, of Akerman, LLP, Tallahassee, and Alexandra
M. Mora and Ndifreke U. Uwem, of Akerman, LLP, Miami, and
Michael J. Holecek, of Gibson, Dunn & Crutcher, LLP, Los
Angeles, CA, for Appellant.

Sean Estes, of Hoyer Law Group, PLLC, Tampa, and Mark
Cuker, of Jacobs Law Group, PC, West Conshohocken, PA, for
Appellee.

September 27, 2024

EDWARDS, C.J.

OptumRx appeals the trial court's order which denied Appellant's amended motion to compel Bay Pharmacy, Inc., Appellee, to arbitrate. OptumRx argues that the trial court erred by concluding it lacked jurisdiction to entertain the motion and petition because the arbitration, if compelled, would take place in California and would not be governed by Florida law. We agree with Appellant, reverse the trial court's order, and remand for further proceedings consistent with this opinion.

## Background Facts

Bay Pharmacy operates in several locations in Florida. Certain health plans, which can include health insurance, make lower prices available for their members when purchasing their prescription medications from "in-network" pharmacies. Instead of negotiating reimbursement prices directly with each pharmacy, a health plan contracts with middleman organizations knowns as pharmacy benefit managers (PBMs). The PBMs do not deal directly with each of the thousands of pharmacies across the country; instead, the PBMs deal with another type of middleman known as a pharmacy services administrative organization (PSAO), which acts as an agent for multiple pharmacies with authority to negotiate reimbursement rates. The PBM negotiates the reimbursement rates that health plans will pay to or through the PBM on the one hand, while also negotiating the reimbursement rates with a PSAO to achieve rates acceptable to the pharmacies the PSAO represents. OptumRx is a PBM. Bay Pharmacy is one of OptumRx's network providers and is part of a PSAO that represents Bay Pharmacy along with hundreds of other pharmacies.

## ADR Provisions in the Parties' Agreements

The relationship between OptumRx and the in-network pharmacies is governed by one or more Provider Agreements and Provider Manuals, both of which include alternative dispute resolution (ADR) provisions. When there is a dispute, the ADR

provisions require detailed written notification of the dispute, followed by a phone conference during which authorized representatives from both sides attempt to resolve the matter. If the dispute is not settled through these informal procedures, the ADR provisions call for binding arbitration rather than litigation. The ADR provisions require all arbitrations to be conducted only in one of two counties in California and further state, "[t]he parties acknowledge that this arbitration agreement is part of a transaction involving interstate commerce and that the Federal Arbitration Act governs both substantive and procedural aspects" of any arbitrations.

## Dispute Letter and Request to Arbitrate

Here, counsel for a PSAO, on behalf of the many pharmacies it represented, sent a "Notification of Dispute" letter to OptumRx. Attached to the dispute letter was a list of several hundred pharmacies located around the country that this PSAO represented, including Bay Pharmacy. To put it very simply, the dispute letter set forth eight specific disputes which accused OptumRx of causing the listed pharmacies to be underpaid for the prescriptions they were filling for in-network customers. The dispute letter concluded with the request for OptumRx to advise if it had "any interest in resolving these disputes." OptumRx responded by initiating the required telephone call with the PSAO to discuss the disputes; however, no resolution was reached. Given the impasse, OptumRx asked if the PSAO would be willing to arbitrate the disputes in accordance with their Provider Agreement and Provider Manual; the PSAO declined.

## Petition and Motion to Compel Arbitration

OptumRx then filed its petition to compel arbitration and its amended motion to compel arbitration in the circuit court in Lake County, Florida where Bay Pharmacy was located. OptumRx's petition stated that it was brought under the Florida Arbitration Code, sections 682.01, *et seq.*, Florida Statutes (2022), and the Federal Arbitration Act, 9 U.S.C. section 4. The only defendant named in this petition was Bay Pharmacy, which responded to the

3

petition and amended motion to arbitrate, opposing same.[1]  The parties filed exhibits and memoranda of law for the trial court's consideration.

<u>The Hearing and Ruling</u>

During the hearing on its amended motion, OptumRx claimed that the circuit court had authority to compel arbitration in accordance with the ADR provisions in the parties' agreements pursuant to Florida's Arbitration Code and separately under the Federal Arbitration Act (FAA).  OptumRx also argued that all issues, including arbitrability were to be decided by the arbitrators, not the court, according to the ADR provisions.  Bay Pharmacy countered, claiming *inter alia*, that there was really no dispute that was appropriate for arbitrating, and the arbitration provisions were unconscionable.  Relying upon *Damora v. Stresscon International, Inc.*, 324 So. 2d 80 (Fla. 1975), Bay Pharmacy argued that the circuit court lacked jurisdiction to entertain the motion to compel because the arbitration would be held outside Florida and would not apply Florida law.

During the hearing, the trial court entertained argument, discussed the various issues and possibly applicable authorities, made no oral rulings on any issues, and requested counsel to submit proposed orders.  Approximately one month later, the trial court issued an order which in pertinent part stated the following, "Plaintiff's Amended Motion to Compel Arbitration is DENIED. *See Northport Health Services v. Estate of Raidoja*, 851 So. 2d 234 (Fla. 5th DCA 2003)."  The order also directed the clerk of court to close the case.  It is from that order that OptumRx timely appealed.

---

[1] OptumRx apparently filed many similar petitions in other Florida courts, in California, and elsewhere seeking to compel other individual pharmacies to arbitrate these disputes.  *See, e.g.*, *OptumRx v. King's Drugs, Inc.*, 385 So. 3d 201 (Fla. 2d DCA 2024).

4

## Standard of Review

"The standard of review of a trial court's order on a motion to compel arbitration is de novo." *Northport Health Servs. of Fla., LLC. v. Louis*, 240 So. 3d 120, 122 (Fla. 5th DCA 2018). Matters of statutory interpretation are also reviewed de novo. *Baker Fam. Chiropractic, LLC v. Liberty Mut. Ins.*, 356 So. 3d 281, 286 (Fla. 5th DCA 2023).

## Analysis

As noted above, the trial court's order denying OptumRx's amended motion to compel arbitration and closing the file cited to and apparently relied upon *Northport Health Services v. Raidoja*, a 2003 case from this Court. *Raidoja* in turn relied upon *Damora v. Stresscon*, a 1975 Florida Supreme Court case, which held that the parties' agreement to arbitrate future disputes in another jurisdiction, i.e. New York, "constituted a stipulation that the Florida Arbitration Code should not apply" and further held that their "agreement to arbitrate future disputes in another jurisdiction is outside the authority of the Florida Arbitration Code, Chapter 682, Florida Statutes, and such a provision renders the agreement to arbitrate voidable at the instance of either party." *Damora*, 324 So. 2d at 81–82. It is important to note that *Damora* interpreted the 1973 version of section 682.02, which provided in pertinent part that:

> Such agreement of provision shall be valid, enforceable, and irrevocable without regard to the justiciable character of the controversy; **provided that this act shall not apply to any such agreement or provision to arbitrate in which it is stipulated that this law shall not apply** or to any arbitration or award thereunder.

§ 682.02, Fla. Stat. (1973) (emphasis added). However, in 2013, Florida's legislature amended section 682.02 by, among other things, removing the provision about stipulations rendering Florida's Arbitration Code inapplicable. *Damora* and *Raidoja* reached appropriate conclusions when applying the 1973 version of § 682.02. However, the trial court in this case erred when it

5

relied on those two cases without taking into consideration that the statutory basis for their holdings no longer exits as a result of the 2013 amendments to section 682.02. Accordingly, we hold that the trial court erred in denying OptumRx's amended motion and dismissing its petition to compel arbitration on the apparent basis that it lacked jurisdiction or legal authority to consider the merits of same because the arbitration would be conducted in California and would not apply Florida law.

Conclusion

We reverse that order and remand this matter to the trial court for further proceedings consistent with this opinion to consider the merits of the amended motion and petition to compel arbitration.

REVERSED and REMANDED.

SOUD and KILBANE, JJ., concur;
KILBANE, J., concurring specially, with opinion in which SOUD, J., concurs.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

6

KILBANE, J., concurring specially.

I agree with the majority that the trial court improperly relied on *Northport Health Servs. v. Estate of Raidoja*, 851 So. 2d 234 (Fla. 5th DCA 2003), and a prior version of the Florida Arbitration Code ("FAC") to deny OptumRx's motion to compel arbitration on jurisdictional grounds.

I write separately to address Bay Pharmacy's contention that OptumRx's decision to invoke the Federal Arbitration Act ("FAA") renders Florida courts without jurisdiction. While textually compelling, Bay Pharmacy's contention is contrary to decades of precedent applying the FAA which we are bound to follow. "Arbitration law that affects interstate commerce in Florida is governed by two acts—the Federal Arbitration Act and the Florida Arbitration Code." *Shotts v. OP Winter Haven, Inc.*, 86 So. 3d 456, 461 (Fla. 2011) (citation omitted). "Federal courts and state courts have concurrent jurisdiction to enforce the FAA," but "federal courts must have an independent jurisdictional basis to entertain cases arising under the FAA." *Baltin v. Alaron Trading Corp.*, 128 F.3d 1466, 1469 (11th Cir. 1997) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 (1983)). In *Moses H. Cone*, the United States Supreme Court explained that the FAA "is something of an anomaly in the field of federal-court jurisdiction. It creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate, yet it does not create any independent federal-question jurisdiction." 460 U.S. at 26 n.32. The Court acknowledged that enforcement of the FAA would be "left in large part to the state courts, [but the FAA] nevertheless represents federal policy to be vindicated by the federal courts where otherwise appropriate." *Id.*[1]

---

[1]    Justice O'Connor dissented from *Moses H. Cone* and dissented again a year later in *Southland Corp. v. Keating*, 465 U.S. 1 (1984), outlining her reasoning as to why the FAA was largely if not entirely procedural and therefore inapplicable in

In enacting section 2 [of the FAA], "Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." Congress provided enforcement mechanisms within the FAA—notably in sections 3 and 4—to implement section 2's substantive rule.

*Shotts*, 86 So. 3d at 462 (citation omitted) (quoting *Keating*, 465 U.S. at 10). Although sections 3 and 4 of the FAA do not apply directly to proceedings in state courts, *Keating*, 465 U.S. at 16 n.10, where state procedure is inconsistent with the FAA, or where it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," such procedure is preempted by the FAA. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)).

Section 682.03, Florida Statutes (2022), provides the state equivalent to section 4 of the FAA. *See Shotts,* 86 So. 3d at 463–64 ("In Florida, an arbitration clause in a contract involving interstate commerce is subject to the Florida Arbitration Code (FAC), to the extent the FAC is not in conflict with the FAA."); *CT Miami, LLC v. Samsung Elecs. Latinoamerica Miami, Inc.*, 201 So. 3d 85, 91 n.3 (Fla. 3d DCA 2015) (explaining "[t]he sections of the

state courts. In *Keating*, she concluded that section 2 of the FAA "like the rest of the FAA, should have no application whatsoever in state courts," and "state courts should nonetheless be allowed, at least in the first instance, to fashion their own procedures for enforcing the right [to arbitration]." *Id.* at 31 (O'Connor, J., dissenting). In reaching this conclusion, she analyzed, among other things, the plain language of section 4 being directed at "*any United States district court.*" *Id.* at 22 (O'Connor, J., dissenting). Yet, as of today, Justice O'Connor's view remains the minority, and "[i]n reviewing issues of federal law, this Court is bound by decisions of the United States Supreme Court." *Airbnb, Inc. v. Doe*, 336 So. 3d 698, 703 (Fla. 2022), *cert. denied*, 143 S. Ct. 484 (2022) (citing *Carnival Corp. v. Carlisle*, 953 So. 2d 461, 465 (Fla. 2007)).

FAC and FAA relevant to the determination of this appeal . . . are 'virtually identical' " (citing *Rowe Enters. v. Int'l Sys. & Elecs. Corp.*, 932 So. 2d 537, 539 (Fla. 1st DCA 2006))). This section states in relevant part, "[o]n motion of a person showing an agreement to arbitrate and alleging another person's refusal to arbitrate pursuant to the agreement . . . [i]f the refusing party opposes the motion, the court shall proceed summarily to decide the issue." § 682.03(1)(b), Fla. Stat. Nonetheless, "[f]ederal substantive law controls arbitration issues arising under contracts governed by the FAA, including in state court." *Airbnb*, 336 So. 3d at 703 (citing *Preston v. Ferrer*, 552 U.S. 346, 349 (2008)). Thus,

> in a hearing on a motion to compel arbitration, the inquiry follows the same three-step process regardless whether the inquiry is conducted under the FAC or the FAA:
>
> Under both federal statutory provisions and Florida's arbitration code, there are three elements for courts to consider in ruling on a motion to compel arbitration of a given dispute: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived.

*Shotts*, 86 So. 3d at 464 (quoting *Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 636 (Fla. 1999)). "A court must compel arbitration where an arbitration agreement and an arbitrable issue exist, and the right to arbitrate has not been waived." *Gale Grp., Inc. v. Westinghouse Elec. Corp.*, 683 So. 2d 661, 663 (Fla. 5th DCA 1996).[2]

---

[2] Bay Pharmacy challenged the existence of an enforceable agreement to arbitrate; however, the trial court did not reach that issue. There are three generally recognized categories of challenges to an arbitration agreement:

> (1) a challenge specific to the arbitration provision itself; (2) a challenge to the contract as a whole that would invalidate the contract after an agreement has been reached, such as fraud, duress, or a contractual provision (other than the arbitration provision itself) that is

Here, the agreement between OptumRx, incorporated in and having its principal place of business in California, and Bay Pharmacy, a Florida Corporation, involves interstate commerce, and the petition to compel arbitration invoked the FAC in addition to the FAA when it was filed in a Florida state court. However, in denying OptumRx's request, the trial court improperly determined it was without jurisdiction and did not conduct the three-step inquiry required by the FAC and the FAA. Accordingly, the appropriate remedy is to remand for the trial court to address OptumRx's claim on the merits.

SOUD, J., concurs.

---

contrary to public policy; and (3) a challenge to the contract as a whole that alleges there was never an agreement between the parties to form a contract (and therefore no agreement to form the arbitration clause contained therein) in the first place.

*CT Miami*, 201 So. 3d at 92 (citation omitted). A trial court, rather than an arbitrator, is to resolve a challenge that falls under category one or three. *Id.* at 91–92. As no district court has analyzed any contract formation issue regarding the agreement between OptumRx and the various pharmacies, *cf. OptumRx v. King's Drugs, Inc.*, 385 So. 3d 201, 207 (Fla. 2d DCA 2024) (resolving the jurisdictional question but remanding for trial court to consider "OptumRx's petitions to compel arbitration on their merits"), on remand the trial court may do so if appropriate.